PEOPLE v SMITH

1. CRIMINAL LAW—INSTRUCTIONS TO JURY—LESSER INCLUDED OF-
   FENSES—EVIDENCE.

   No charge as to a lesser included offense need be given if there is
   a request to charge as to a lesser included offense but there is
   no evidence of such a lesser included offense or the facts are
   such that the court or the jury would be obliged to conclude
   that the defendant was guilty of the offense charged or not
   guilty; however, if the evidence is subject to different interpre-
   tations that would justify a finding of a lesser offense, a charge
   as to the lesser offense, especially if one is requested, should be
   given.

2. HOMICIDE—MURDER—FELONY MURDER—CONTINUOUS TRANSACTION.

   A murder committed while attempting to escape from or prevent
   detection of a felony is felony murder, but only if the murder is
   committed as part of a continuous transaction with, or is
   otherwise immediately connected with, the underlying felony.

3. HOMICIDE—MURDER—FELONY MURDER—INSTRUCTIONS TO JURY—
   LESSER INCLUDED OFFENSES.

   Refusal of the trial court to instruct the jury on the lesser
   included offenses of second-degree murder and voluntary man-
   slaughter in a felony-murder trial was error where the jury
   could find that the homicide was not committed while attempt-
   ing to escape, was not committed while attempting to prevent
   detection of the felony, and was not immediately connected
   with the underlying felony.

Appeal from Recorder's Court of Detroit, Rich-
ard D. Dunn, J. Submitted Division 1 June 13,

REFERENCES FOR POINTS IN HEADNOTES

[1] 53 Am Jur, Trial § 511.
[2] 40 Am Jur 2d, Homicide §§ 34, 35, 46.
   Felony-murder doctrine: application of felony-murder doctrine
   where felony relied upon is an includible offense with the homi-
   cide. 40 ALR3d 1341.
[3] 40 Am Jur 2d, Homicide § 525 et seq.

1974, at Detroit (Docket No. 15822.) Decided August 27, 1974. Leave to appeal applied for.

Archie M. Smith was convicted of murder of the first degree. Defendant appeals. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Thomas A. Ziolkowski,* Assistant Prosecuting Attorney, for the people.

*Dennis H. Benson,* Assistant State Appellate Defender, for defendant.

Before: J. H. Gillis, P. J., and Allen and Elliott,* JJ.

J. H. Gillis, P. J. Defendant was charged with felony murder (MCLA 750.316; MSA 28.548),[1] the underlying felony being robbery. Mr. Smith defended himself and prior to the jury instructions the following exchange occurred:

"*Mr. Smith:* As far as the evidence, I feel they [the jury] could be charged with murder one or two or manslaughter.

"*The Court:* No, only murder one.

"*Mr. Monash [Prosecutor]:* Do you want any included offenses?

"*The Court:* Any homicide perpetrated with another

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] MCLA 750.316; MSA 28.548, provides in pertinent part:

"All *murder* * * * which shall be committed in the perpetration, or attempt to perpetrate any arson, rape, robbery, burglary, larceny of any kind, extortion or kidnapping, shall be murder of the first degree." (Emphasis supplied.)

felony is murder one. It is not murder two or manslaughter.

\*   \*   \*

*"Mr. Smith:* You said you won't say manslaughter or second degree?

*"The Court:* I will not charge them. It is either murder one or you are innocent. One or the other."

The jury found defendant guilty as charged and he was sentenced to life imprisonment. On appeal, defendant argues that the court's refusal to instruct the jury on the lesser offenses of second-degree murder and voluntary manslaughter constitutes reversible error.

This Court has split on the question raised here. People v Bufkin, 43 Mich App 585, 589; 204 NW2d 762, 763 (1972), held:

"[T]hat in a prosecution for felony murder, that is to say any homicide committed in the perpetration, or the attempt to perpetrate one of the statutorily specified offenses, the trial judge is obliged to instruct the jury that its verdict shall be guilty of murder in the first degree or not guilty."

See *People v Graves,* 52 Mich App 326; 217 NW2d 78 (1974). However, in *People v Wimbush,* 45 Mich App 42, 45–46; 205 NW2d 890, 892–893 (1973), another panel of this Court responded:

"Recently, a panel of this Court held that henceforward 'in a prosecution for felony murder \* \* \* the trial judge is obliged to instruct the jury that its verdict shall be guilty of murder in the first degree or not guilty.' *People v Bufkin,* 43 Mich App 585; 204 NW2d 762 (1972). We disagree that such is the law of Michigan or even a wise rule. There have been cases in which what appeared to have been a felony murder was less. A rigid rule, such as that announced in *Bufkin,* may allow an individual guilty of second-degree murder or manslaughter to escape conviction, or may tempt a

jury to convict a man of a more serious crime rather than acquit him or properly return a verdict of guilty of homicide of a lesser degree than first-degree murder.".

We think *Wimbush* is not only the better rule but also more accurately reflects the state of the law in Michigan.

*Bufkin* relies primarily on *People v Dupuis,* 371 Mich 395; 124 NW2d 242 (1963). This reliance is not so much misplaced as it is overplaced. In *Dupuis* the Court refused to instruct on lesser offenses, charging the jury that defendant was either guilty of first degree murder or he was innocent. However, in that case "the undisputed proofs showed that the murder was committed in the perpetration of a robbery". *Dupuis,* 371 Mich 401; 124 NW2d 245. We do not quarrel with this holding. But we think it is wrong to extend its application, as *Bufkin* did, to all cases, regardless of the factual setting, in which felony murder is charged.

The correct rule—the one adopted in *Wimbush* and the one we will apply to the facts of this case —is set forth in *People v Carter,* 387 Mich 397, 422–423; 197 NW2d 57, 69 (1972):

"In a criminal case, if there is a request to charge as to a lesser included offense, but there is no evidence of such a lesser included offense, or the facts are such that the court or the jury would be obliged to conclude that the defendant was guilty of the offense charged or not guilty, no charge as to a lesser included offense need be given.

"But if the evidence is subject to different interpretations that would justify a finding of a lesser offense, a charge as to such lesser offense, especially if one is requested, should be given."[2]

---

[2] We note that as authority for the first sentence we quote from *People v Carter,* 387 Mich 397, 422; 197 NW2d 57, 69 (1972), the Court cited *People v Dupuis,* 371 Mich 395; 124 NW2d 242 (1963).

Thus, the question becomes: Do the facts of the instant case admit to an interpretation which would justify a jury returning a verdict of a lesser offense? If they do, then we must reverse.

The only eyewitness testimony was that of Joseph Pruitt. He testified that at approximately 12:30 a.m. on December 26, 1971, he and David Bowers were at Pruitt's Detroit apartment when defendant telephoned and asked if he could come over to the apartment. (Defendant was a casual acquaintance of Pruitt's.) Shortly thereafter defendant and his cousin, William Smith, Jr., arrived at the apartment asking for money. When the request was refused, defendant and his cousin tied up Pruitt and Bowers and took several items from the apartment and placed them in garbage bags. The four men then left the apartment, got into a car occupied by two others, and drove to defendant's grandmother's house. After leaving the stolen goods there, the group of six then drove back to Pruitt's apartment. All of the men except the driver went back into the apartment and removed three television sets, but took them back when they discovered the car had been driven away.

Defendant and the four others then walked to a bus stop. Neither defendant nor anyone else in the group had any stolen goods in his possession. Pruitt told defendant's cousin that he would not get on a bus. Defendant's cousin consented, and when the bus arrived Pruitt waited until the others had boarded and then walked away. Pruitt testified that it was between 1:30 a.m. and 2 a.m. when he left the group. The police received a report of a shooting at approximately 2:45 a.m., which led them to the body of David Bowers. The body was found about a mile and a half from the bus stop.

In order to convict a defendant of felony murder under MCLA 750.316; MSA 28.548, the prosecution must establish that the murder occurred in the perpetration or attempt to perpetrate one of the enumerated felonies. A robber is engaged in the perpetration of the crime "while he is endeavoring to escape and make away with the goods taken. And a homicide committed *immediately* after a robbery, apparently for the purpose of *preventing detection,*" is felony murder. (Emphasis supplied.) *People v Podolski,* 332 Mich 508, 518; 52 NW2d 201, 205 (1952); see *People v Bowen,* 12 Mich App 438; 162 NW2d 911 (1968); *People v Goree,* 30 Mich App 490; 186 NW2d 872 (1971). Likewise the New York Court of Appeals said that in order for a killing to be felony murder it

"must occur while the actor or one or more of his confederates is engaged in securing the plunder or in doing something immediately connected with the underlying crime *(Dolan v People,* 64 NY 485 [1876]); that escape may, under certain unities of time, manner, and place, be a matter so immediately connected with the crime as to be part of its commission *(People v Giro,* 197 NY 152; 90 NE 432 [1910]); but that where there is * * * a complete intervening desistance from the crime, as by the abandonment of the loot and running away, the subsequent homicide is not murder in the first degree without proof of deliberation and intent." *People v Jackson,* 20 NY2d 440, 454; 285 NYS2d 8, 21; 231 NE2d 722, 732 (1967). See *People v Ford,* 65 Cal 2d 41; 52 Cal Rptr 228; 416 P2d 132 (1966).

Thus, if a murder is committed while attempting to escape from or prevent detection of the felony, it is felony murder, but only if it is committed as a part of a continuous transaction with, or is otherwise "immediately connected" with, the underlying felony.

Applying this concept of felony murder to the

facts of the present case, we think a jury could find that the homicide was not committed in the perpetration or attempt to perpetrate the robbery. First, a jury could find that the killing was not committed while attempting to escape. They could find that defendant had already successfully made his "getaway". Defendant was not being pursued by the police. Nor were he and his accomplices being pursued by the victims. On the contrary, Pruitt and Bowers were forced to accompany the felons to the bus stop. Secondly, a jury could find that the homicide was not committed while attempting to prevent detection of the robbery. It would make little sense for defendant to kill one victim of the robbery in order to prevent its detection when the other victim, Pruitt, had already been set free and could inform the police of the crime. And, lastly, on the facts of this case it is a jury question whether or not the homicide was "immediately connected" with the underlying felony. The stolen goods were disposed of and the actual robbery completed an hour to an hour and a half before the killing. And the homicide occurred a couple of miles from the robbery scene.

The trial court erred in refusing to instruct the jury on the lesser offenses of second degree murder and voluntary manslaughter.[3] Since this error compels us to reverse defendant's conviction, we do not reach defendant's other assignments of error.

Reversed and remanded.

All concurred.

---

[3] We note that while we think a jury could conclude that this homicide was not felony murder, we also think it could conclude the killing was felony murder. Consequently, we reject defendant's argument that it was error to instruct the jury on felony murder.