PEOPLE v CRAIG

Opinion of the Court

1. Homicide—Felony Murder—Lesser Included Offenses—Elements—Jury.

The Court of Appeals has split on the issue of whether second-degree murder can ever be a lesser included offense of felony murder, but the better rule is that the elements of the felony may be separated from the malice required for murder and jury verdicts of lesser included homicide offenses are therefore permissible.

2. Homicide—First-Degree Murder—Statutes—General Provisions—Precedence—Jury.

The first-degree murder statute, which explicitly provides that all murder committed in the perpetration or attempt to perpetrate any robbery shall be murder in the first degree, must be given precedence over the general provision that the jury shall by their verdict determine the degree of a charged crime.

3. Criminal Law—Homicide—Felony Murder—Instructions to Jury—Lesser Included Offenses—Appeal and Error.

It is error for a trial court to instruct a jury in a felony murder trial that they may find the defendant guilty of second-degree murder rather than first-degree where they also find that the defendant was involved in the perpetration of a robbery when the killing occurred; a jury must be limited, when there is no evidence of any crime less than felony murder, to two possible verdicts: guilty of first-degree murder, or not guilty.

References for Points in Headnotes
[1, 5] 40 Am Jur 2d, Homicide § 46.
[2] 73 Am Jur 2d, Statutes § 257.
[3, 5, 6] 40 Am Jur 2d, Homicide §§ 498, 506, 534.
Absence of evidence supporting charge of lesser degree of homicide as affecting duty of court to instruct as to, or right of jury to convict of, lesser degree. 21 ALR 628, s. 27 ALR 1100, 102 ALR 1019.
[4] 75 Am Jur 2d, Trial § 573 et seq.

4. COURTS—JURY—INSTRUCTIONS—DISREGARDING LAW.

It is improper to convey to a jury that they have the power to disregard the law.

5. HOMICIDE—FELONY MURDER—LESSER INCLUDED OFFENSES—SECOND-DEGREE MURDER—INSTRUCTIONS TO JURY—ROBBERY—APPEAL AND ERROR.

An instruction to a jury in a felony murder trial that they could find the defendant guilty of second-degree murder rather than first-degree, where they also found that the defendant was perpetrating a robbery when the killing occurred, is erroneous, but such error was not reversible where defense counsel approved the instruction and the subsequent second-degree murder verdict established that the jury was convinced beyond a reasonable doubt that the defendant was guilty of murder and she was not prejudiced by the reduction in degree.

CONCURRENCE IN RESULT BY M. J. KELLY, J.

6. CRIMINAL LAW—INSTRUCTIONS TO JURY—LESSER INCLUDED OFFENSES—FACTS—EVIDENCE—DIFFERENT INTERPRETATIONS.

*No instructions as to a lesser included offense need be given a jury in a criminal case where there is no evidence of such lesser offense or the facts are such that the court or the jury would be obliged to conclude that the defendant was guilty of the offense as charged or not guilty, but a charge as to a lesser offense should be given, especially when requested, where the evidence is subject to different interpretations which would justify a finding of guilt of the lesser offense.*

Appeal from Monroe, William J. Weipert, Jr., J. Submitted October 14, 1975, at Lansing. (Docket No. 21342.) Decided January 6, 1976.

Linda Craig was convicted of second-degree murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *James J. Rostash,* Prosecuting Attorney (Prosecuting Attorneys Appellate Service, *Edward R. Wilson,* Director, by

*Lee W. Atkinson,* Special Assistant Attorney General), for the people.

*Mark J. Spielman,* for defendant.

Before: McGregor, P. J., and D. E. Holbrook, Jr. and M. J. Kelly, JJ.

McGregor, P. J. In the early morning of November 2, 1973, one Thomas Warren was robbed and brutally murdered while hitchhiking in Monroe County. This defendant and another person were arrested for the crime and charged with felony murder. MCLA 750.316; MSA 28.548. Before trial, defendant's accomplice pled guilty to second-degree murder and as a result, defendant was tried alone on the original charge. She was convicted by the jury of murder in the second degree, MCLA 750.317; MSA 28.549, and subsequently sentenced to 10 to 30 years in prison. She now appeals her conviction as a matter of right.

Defendant first claims that the trial court should not have instructed the jury as to second-degree murder. She argues that there can never be any lesser included offenses to the charge of felony murder and, consequently, her conviction of second-degree murder must be reversed.

The issue of whether second-degree murder can ever be a lesser included offense of felony murder has split our Court and is currently under consideration by our Supreme Court. In *People v Bufkin,* 43 Mich App 585; 204 NW2d 762 (1972), and *People v Graves,* 52 Mich App 326; 217 NW2d 78 (1974), felony murder was viewed as "a creature of statute in which the element of premeditation is conclusively presumed by proof of the perpetration. or attempt to perpetrate a specific felony. As such, neither second-degree murder nor manslaughter

can possibly be lesser included offenses. These two latter crimes and felony murder are mutually exclusive offenses". *Bufkin, supra,* p 589.

Under this view, the commission of a felony, by and of itself, satisfies the mental requirement for murder in the first degree and, therefore, the intent to kill, the conscious creation of risk, or the commission of an act of gross negligence become ancillary matters not properly at issue.

On the other hand, *People v Wimbush,* 45 Mich App 42; 205 NW2d 890 (1973), and *People v Smith,* 55 Mich App 184; 222 NW2d 172 (1974), separate the element of the felony from the malice required for murder and, as a result, lesser included offenses are permissible. Under this view, the intent for felony murder requires at least the conscious creation of a very high degree of risk of death, with knowledge of its probable consequences. Thus, the crime can be raised to murder in the first degree by finding the commission or attempt to commit one of the felonies enumerated within the first-degree murder statute, but only after the requisite *mens rea* for murder has been established.

As the Supreme Court will also be considering this issue, we do not think it necessary to discuss the historical development of the felony murder rule in Michigan. All that need be stated here is that we believe the better rule to be the one expressed in *People v Wimbush, supra.*

We reach this conclusion for three reasons. First, this rule is eminently more fair in its application, both to the people and to the defendant, than is the *Bufkin* rule. As stated in *Wimbush:*

"A rigid rule, such as that announced in *Bufkin,* may allow an individual guilty of second-degree murder or

manslaughter to escape conviction, or may tempt a jury to convict a man of a more serious crime rather than acquit him or properly return a verdict of guilty of homicide of a lesser degree than first-degree murder." 45 Mich App at 46.

The *Wimbush* rule would avoid both these situations and, therefore, lead to fairer verdicts.

Secondly, the inclusion in 1969 of felonies such as extortion and larceny of any kind seriously erodes the basis underlying the *Bufkin* rule. That rule is premised on the assumption that the enumerated felonies are so inherently and naturally dangerous to human life that the intent to commit any of those crimes furnishes sufficient intent for the crime of felony murder. This is so because the intentional commission of a felony such as armed robbery or rape usually involves the conscious creation of a very high degree of risk of death with knowledge of its probable consequences. However, no one would suggest that larceny, especially petty larceny, is attendant with such consequences. The *Bufkin* rule sets a standard which would allow the intentional commission of a petty larceny, without more, to be sufficient to satisfy the *mens rea* of felony murder, even though the killing is purely accidental or done in self-defense.[1] We do not believe that this standard can be reconciled with our concept that the punishment should be related to the moral guilt of the crime involved.

Third, the recent decisions of our Supreme Court seem to mandate the application of the *Wimbush* rule. Although *People v Carter,* 387 Mich 397; 197 NW2d 57 (1972), was reversed on other grounds making the language dicta, the Supreme Court

---

[1] Thus, an unarmed shoplifter under the *Bufkin* rule could be found guilty of first-degree murder if, while fleeing, a security guard fired at him but killed an innocent bystander.

indicated that the nature of the felonious act must be considered to determine whether or not there was malice. The Court stated:

"To hold that in all cases it is murder if a killing occurs in the commission of any felony would take from the jury the essential question of malice."

Likewise, in *People v Allen,* 390 Mich 383; 212 NW2d 21 (1973), the Supreme Court adopted the dissenting opinion of Judge (now Justice) LEVIN from the Court of Appeals reversing a conviction of felony murder and entering a judgment of guilty of second-degree murder. Essential to the decision was the theory that the commission of the felony was "the essential element that distinguishes the offense of first-degree from second-degree murder". *Allen, supra,* p 385.

Therefore, we hold that second-degree murder can be a lesser included offense in a first-degree felony murder prosecution if warranted by the facts. Since the facts of the present case were such that they would support an instruction on the lesser offense of second-degree murder, we find no error in the jury being so instructed.

Having so decided, we reach the defendant's second assignment of error. After deliberating for approximately two hours, the jury returned to the court room and the following occurred:

*"The Court:* The record may show the jury has returned into open Court at 3:00 o'clock in the afternoon. They have been in deliberations since 1:15 this afternoon. They have submitted a written question to me for answer, which I have reviewed with Mr. McCormick and Mr. Devoe in chambers.

"The following is your question, members of the jury, 'Do we have the right to vote for second, or must we stick with first degree, assuming there was intent to

rob?' Who is your foreman? This was your question, Mr. Foreman?

"*Mr. Foreman:* That is correct. That is what the jury put to me.

"*The Court:* Now, the answer is clear under the statute, members of the jury. The statute provides as follows, part of it: 'The jury, before whom any person indicted for murder shall be tried, shall, if they find such person guilty thereof, ascertain in their verdict whether it be murder of the first or second degree.'

"Therefore, the answer to the question is that you do have the right to vote for second degree, just as you have the right on first degree. Does that answer your question, Mr. Foreman?

"*Mr. Foreman:* Yes.

"*The Court:* You may resume your deliberations then, ladies and gentlemen."

The following proceedings were then had, out of the presence of the jury:

"*The Court:* Mr. Prosecuting Attorney, and Mr. McCormick for the Defendant, are you satisfied with the answer the Court gave to the jury's question?

"*Mr. Devoe:* The People are satisfied, Your Honor.

"*Mr. McCormick:* I believe that is the law.

"*The Court:* And you are satisfied likewise then?

"*Mr. McCormick:* Yes.

"*The Court:* The record may so show. If you had not been, either one, of course, I would have considered your request to charge otherwise, but neither has made any contrary or different request, and I believe too that that is fully in accordance with the law."

The defendant claims that the above instruction was erroneous in that it did not properly state the applicable law. We agree.

The question from the jury was, in essence, whether they could find the defendant guilty of second-degree murder, rather than first degree, if

they also found that the defendant was involved in the perpetration of the robbery. We believe the correct answer to this question should have been "no". The jury should have been instructed that, if they found that the murder was committed during defendant's participation in the robbery, they could return only a verdict of guilty of first-degree murder.

The first-degree murder statute is explicit. It provides that "All murder * * * which shall be committed in the perpetration or attempt to perpetrate any * * * robbery * * * *shall* be murder in the first degree". (Emphasis added.) Although MCLA 750.318; MSA 28.550, referred to by the trial court, does state that the jury shall ascertain the degree of murder, we believe that the rule of construction which dictates that specific statutes be given precedence over conflicting general provisions is applicable here. Following this rule, we hold that the first-degree murder statute which is declaratory of the degree when the crime is committed by certain means and under certain circumstances is controlling, notwithstanding the general provision that the jury shall, by their verdict, determine the degree. If it were otherwise, a defendant would always be entitled, in a felony murder prosecution, to an instruction directing the jury to ascertain whether the murder committed was first or second degree. This is clearly not the case. As stated in *Wimbush, supra,* at p 49:

"We think it the law and the better rule that instructions be molded to the particular facts of each case. When there is no evidence of any crime less than felony murder, the jury must be limited to two possible verdicts: guilty of first-degree murder, or not guilty. However, when the evidence will admit of a lesser offense, justice requires that the trial court be at liberty to so

instruct the jury. See *People v Carter, supra,* 422–423, fns. 3, 4."

Finding the supplementary instruction erroneous, we are now presented with the issue of whether such error warrants the reversal of defendant's conviction.

Plaintiff first contends that it is never error for the jury, after finding the defendant guilty of the greater crime, to exercise its mercy power and return a verdict of guilty to a lesser offense, if the lesser offense is supportable by the evidence. While the jury does have the power to reach such a "compromise" verdict if they so choose, plaintiff's argument must nevertheless fail in the present case. This is so for two reasons. First, if the instruction is construed as an attempt by the trial court to inform the jury that they have such a power, then we believe the trial court would have committed error in so doing. It is clearly improper to convey to the jury that they have the power to disregard the law. See *People v Smith,* 145 Mich 530; 108 NW 1072 (1906), and *Hamilton v People,* 29 Mich 173 (1874). Secondly, it is far more plausible to assume that the jury was not, in fact, exercising this power, but rather that they were merely following the erroneous instruction of the trial court as to the law involved.

The plaintiff next contends that the defendant was in no way prejudiced by the instruction and, therefore, her conviction should be affirmed. Plaintiff argues that if the jury had been properly instructed, they would have convicted the defendant of first-degree murder, since their question indicated that they had found all the elements necessary therefor.

Defendant counters this argument by stating

that, if the jury had been instructed properly, they may very well have returned a verdict of not guilty. She argues that, if proper instructions had been given, the jury, based upon their findings as indicated by the question, would have felt duty bound to return a verdict of either guilty of first-degree murder or not guilty. The jury, realizing, however, that the defendant's accomplice did the actual killing and was allowed to plead guilty to second-degree murder, may have felt that the defendant was less blameworthy and, therefore, they could have returned a verdict of not guilty.

We do not think that the defendant can claim any prejudice here. Although it was error for the trial court so to instruct the jury, defendant has not suffered. If anyone has suffered by the instruction, it has been the people of the State of Michigan, and not the defendant. Based on the jury's question, it appears that the defendant should have been convicted of murder in the first degree. While the jury, perhaps out of a sense of fairness, did not convict the defendant of a more serious crime than that of which the triggerman had been convicted, the verdict nevertheless establishes that they were convinced beyond a reasonable doubt that the defendant was guilty of murder. We will not upset that determination. In order to accept defendant's argument, it would be necessary to assume that the jury would disregard this specific finding and reach a verdict based solely on compassion rather than on the evidence presented. We do not believe that an appellate court has the right to assume that a jury in reaching a verdict would so violate their oath.

Moreover, defendant's counsel reviewed the jury's question and expressed satisfaction with the instruction given. In view of the strong evidence

presented against the defendant, it is arguable that defense counsel would have been doing his client a disservice by objecting to this instruction and insisting that the jury's question allowed only a verdict of murder in the first degree. Thus, defense counsel's approval of the instruction could have been a matter of trial strategy, since he may have felt that allowing a possible verdict of second-degree murder was in his client's best interest. Whatever the case, we find no miscarriage of justice under the facts of the present case.

We have examined the remaining issue raised by the defendant and find no reversible error.

Affirmed.

D. E. HOLBROOK, JR., J., concurred.

M. J. KELLY, J. *(concurring in result).* I would simply hold here that, limited to the facts of this case, the trial judge did not err in including an instruction on second-degree murder where the instruction was with the express consent of the defendant and her attorney.

I think the charge in this case can be justified under the rule of *People v Carter,* 387 Mich 397, 422–423; 197 NW2d 57 (1972).

"In a criminal case, if there is a request to charge as to a lesser included offense, but there is no evidence of such a lesser included offense, or the facts are such that the court or the jury would be obliged to conclude that the defendant was guilty of the offense charged or not guilty, no charge as to a lesser included offense need be given.

"But if the evidence is subject to different interpretations that would justify a finding of a lesser offense, a charge as to such lesser offense, especially if one is requested, should be given."

The posture of this case would place any trial judge on the horns of a dilemma. If the defense had insisted on a verdict of felony murder or a verdict of not guilty, we would have a different question here before us. However, the defense in this case was alibi: that the defendant was not present at the scene of the crime, and was in fact home in bed at the time of the occurrence. The trial judge, under the circumstances, volunteered to give the charge of felony murder, a charge of second-degree murder and a charge of manslaughter. Defendant and her attorney conferred about the matter, a record was made, and defendant rejected a charge of manslaughter but accepted a charge of first-degree felony murder and second-degree murder. On these facts I do not think we have error to consider on that question.

This may appear to be a fence-straddling position between *People v Bufkin,* 43 Mich App 585; 204 NW2d 762 (1972), *lv pending,* and *People v Wimbush,* 45 Mich App 42; 205 NW2d 890 (1973), *lv den,* 390 Mich 770 (1973), but I believe we are justified in avoiding taking that issue head-on because of the three striking aspects in this case which differentiate it from *Bufkin* and *Wimbush:*

1. The defense in this case was alibi.

2. The triggerman who testified to defendant's participation had pleaded guilty to second-degree murder, which fact (as well as his sentence) was known to the jury.[1]

---

[1] *"The Court:* Since it was brought out what the sentence recommendation was, perhaps I might ask Mr. Symington what sentence was actually imposed on you for this crime for which you pleaded guilty to murder in the second degree?

*"Mr. Symington:* 20 to 40 years."

3. There was no objection to the instruction as given.[2]

I concur in affirmance.

---

[2] MCLA 768.29; MSA 28.1052, GCR 1963, 516.2. *People v Manuel Johnson,* 58 Mich App 347, 355; 227 NW2d 337 (1975).